Eveline Estella TUCKER, Petitioner,

v.

DEPARTMENT OF HOMELAND SE-
CURITY, Emilio T. Gonzalez, Di-
rector, Michael Chertoff, Secretary,
Respondents.

No. 06–0749–ag.

United States Court of Appeals,
Second Circuit.

July 27, 2007.

Stephen K. Tills, Law Office of Stephen K. Tills, Orchard Park, NY, for Petitioner.

Gail Y. Mitchell, Assistant United States Attorney, for Terrance P. Flynn, United States Attorney for the Western District of New York, Buffalo, NY, for Respondents.

Present: Hon. WILFRED FEINBERG, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Petitioner Eveline Estella Tucker, a Jamaican native and Canadian citizen, appeals from the January 20, 2006 decision of the BIA, which affirmed without opinion Immigration Judge ("IJ") Michaelangelo Rocco's order of removal. *In re Eveline Estella Tucker*, No. A36 933 483 (B.I.A. Jan. 20, 2006), *aff'g* No. A36 933 483 (Immig. Ct. Buffalo, N.Y. Nov. 17, 2004). We assume the parties' familiarity with the underlying facts of the case, its procedural history, and the arguments on appeal.

When the BIA issues an opinion that fully adopts the IJ's decision, we re-

view the IJ's decision. *See, e.g., Chun Gao v. Gonzales,* 424 F.3d 122, 124 (2d Cir. 2005). Petitioner argues that she did not abandon her lawful permanent resident status because her trips to Canada were "temporary" and her intent was to return to the United States, such that she could be deemed a returning resident immigrant under 8 U.S.C. § 1101(a)(27)(A), permitted, at the discretion of the Attorney General, to re-enter the country without re-entry documents, 8 U.S.C. § 1181(b). The evidence adduced at the hearing, however, is clearly to the contrary. Tucker admitted to the IJ that after obtaining permanent residency status in 1979, she moved to Canada the next year where she lived and worked for virtually all of the next quarter-century. She visited the United States several times a year, but such trips lasted only between one and three weeks (with the exception of the period between May 1996 and September 1998, during which petitioner lived with her family in the United States). Given the above, it is clear that the government amply met its burden of demonstrating Tucker's abandonment of her residency status by "clear, unequivocal, and convincing evidence," *Francis v. Gonzales,* 442 F.3d 131, 138 (2d Cir.2006) (internal quotation marks omitted), because her claimed "trips" to Canada were neither "relatively short" in duration nor "fixed by some early event," *Ahmed v. Ashcroft,* 286 F.3d 611, 613 (2d Cir.2002) (per curiam) (internal quotation marks omitted).

Moreover, the IJ did not err in finding clear, unequivocal and convincing evidence that while in Canada, Tucker "lacked the requisite intent to return to the United States within a relatively short period of time." *Id.* Petitioner admitted that she had married a Canadian and subsequently took his Canadian citizenship, even using her Canadian passport when visiting the United States. These facts "along with the many indications of [Tucker's] intended permanence abroad, make the [IJ's] finding" here "unassailable," *id.,* and the IJ did not err in finding that Tucker has abandoned her permanent resident status.[1]

■ Tucker also argues that the IJ erred in additionally finding her inadmissible because of her conviction for a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). Tucker was convicted of fraud involving more than $1000 in 1989 under Canadian Criminal Code § 380(1). *See* R.S.C.1985, c. C–46, § 380(1). The administrative hearing record contains only Tucker's admission that she was convicted of fraud and a Canadian Mounted Police fingerprint report reflecting a conviction for fraud over $1000. The BIA has determined that an "intent to defraud" constitutes moral turpitude. *See In re Flores,* 17 I. & N. Dec. 225, 227–228 (B.I.A.1980). Because the BIA has taken a "categorical" approach to analyzing whether a conviction is a crime involving moral turpitude, it must examine each statute to ensure that all violations are morally turpitudinous. *See Michel v. I.N.S.,* 206 F.3d 253, 263 (2d Cir.2000). The IJ, however, failed to analyze the Canadian statute to determine whether the elements of § 380(1) necessarily encompass an "intent to defraud." In 1993, the Canadian Supreme Court suggested that convictions under § 380(1) may be based,

---

1. The fact that petitioner sustained injuries in an automobile accident that forced her to terminate a trip to the United States to seek medical care in Canada—where she collected unemployment benefits for almost five years—does not alter the calculus given the overwhelming evidence in the government's favor.

in certain instances, on reckless rather than intentional conduct. *See R v. Théroux,* [1993] 2 S.C.R. 5. Because the IJ failed to analyze the elements of the statute as defined by Canadian law and there was no record of conviction before the immigration court that could have indicated the basis for conviction, we vacate and remand to the BIA to decide in the first instance whether and why convictions under Canadian Criminal Code § 380(1) are categorically crimes involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I).[2]

For the foregoing reasons, we DENY the petition for review in part and GRANT it in part, VACATE the BIA's decision in part, and REMAND to the BIA for further proceedings consistent with this decision. The pending motion for a stay of removal is GRANTED pending the resolution or abandonment of the further proceedings before the BIA.

---

2. Because Tucker is inadmissible based on her abandonment of lawful permanent residence status, the Government will need to decide if it wishes to continue these proceedings before the BIA on the alternate finding that Tucker was convicted of a crime involving moral turpitude. We reach this alternate finding only because of the collateral consequences that both parties agree the finding will have on Tucker's future ability to re-enter the country.